IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES E. MEYER,<br>        Plaintiffs,<br><br>v.<br><br>DELAWARE VALLEY LIFT TRUCK,<br>INC., JOHN W. MEYER, BARBARA A.<br>MEYER, AND LAW OFFICES OF<br>BARRY F. PENN, P.C.,<br>        Defendants. | CIVIL ACTION<br><br><br><br>NO. 18-1118 |

## MEMORANDUM OPINION

This family dispute turns on one principal question: Was one brother, John W. Meyer ("Jack"), within his rights to push another brother, Jim Meyer, out of the family business? Jim has sued Jack, Barbara Meyer (Jack's wife), the Law Offices of Barry F. Penn (Jack's lawyer, hereinafter "Penn"), and the business itself, Delaware Valley Lift Truck, Inc. ("DVLT"), complaining that his ouster was improper.

Out of this basic controversy, Plaintiff asserts various counts under state law. Pending now are two motions to dismiss the Complaint, one filed by Jack, Barbara and DVLT, and another filed by Penn. For the reasons that follow, both motions will be granted in part and denied in part.

### I.  LEGAL STANDARD

To overcome a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a complaint satisfies this standard, a court

must first outline the required elements, then "peel away" legal conclusions from the complaint, and finally decide whether the well-pled factual allegations plausibly entitle the plaintiff to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

When interpreting Pennsylvania law, this Court must follow the Pennsylvania Supreme Court. *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016). If the law is unclear and there is no controlling precedent issued by Pennsylvania's highest court, this Court must "predict" how it would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).[1]

## II. FACTS

Although the Complaint makes for a lengthy document replete with far-reaching conclusory legal assertions, "peel[ing] away" these legal conclusions from the Complaint leaves the following spare set of factual allegations.[2]

DVLT is a closely held corporation that sells, rents, and services forklifts and material handling equipment. At least initially, the company was jointly owned by Jim and Jack. On

---

[1] Penn argues that there is no difference between Pennsylvania and New Jersey substantive law on the questions at issue in this case and therefore a choice of law analysis is unnecessary. The other parties all appear to assume that Pennsylvania law applies, as they rely exclusively on state law from Pennsylvania. Given no argument to the contrary, the Court will treat Pennsylvania law as the applicable state law in the case.

[2] Both parties repeatedly reference documents that are neither attached to nor relied upon in the Complaint, such as, for example, an affidavit submitted by Jim and Jack's father purporting to explain some of the events in question, as well as various email correspondences between the parties. Ordinarily, such documents cannot be examined by a District Court at the motion to dismiss stage because a court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). This rule ceases to apply, however, if a court "converts" the motion to dismiss into a motion for summary judgment, as permitted by Federal Rule of Civil Procedure 12(d). To convert the motion, a court must ensure that "the materials submitted require conversion" and that "the parties ha[ve] adequate notice of the ... court's intention to convert." *In re Rockefeller Ctr Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) Nevertheless, the decision to convert is entirely discretionary—the Court may simply disregard the extraneous materials and treat the motion to dismiss as a motion to dismiss. *See, e.g., Zuber v. Boscov's*, 2018 WL 2086895, at *2 (E.D. Pa. 2018) (citing *Kulwicki v. Dawson*, 969 F.2d 1454 (3d Cir. 1992)). Here, the motion will not be converted, as a discretionary matter. Therefore, only materials properly presented on a motion to dismiss—namely, the Complaint itself, and the Shareholder Agreement upon which the Complaint relies—will be considered.

2

February 1, 2008, Jim and Jack executed a "Shareholders' Agreement" (the "Agreement") that defined each party's rights and responsibilities with respect to the company. The Agreement contained two provisions that are relevant to the pending motions:

**Section 3(a).**

Termination of Employment. (a) If the employment of any Shareholder [that is, Jim or Jack] now or hereafter employed by Corporation terminates for any reason, other than by Disability, death or Retirement, such termination, whether voluntary or involuntary, shall be treated as an offer (made on the date of termination of employment) to sell all of his Shares and any Shares previously transferred by Shareholder to a trust as permitted by Paragraph 2(c) at the Purchase Price, as determined under Paragraph 9(c), first to the Corporation and then, if required, to the Other Shareholders under the offering procedures set forth in Paragraphs 6 and 7 hereof. The terms of payment of the Purchase Price for such Shares shall be as set forth in Paragraph 10 hereof.

**Section 26(c).**

The Shareholders acknowledge that major decisions of the Corporation shall require unanimous consent of the Shareholders. In the event of a disagreement between the Shareholders that cannot be resolved, the Shareholders agree that John C. Meyer, Sr., who may consult with Don Fork, shall resolve such disagreement. In the event John C. Meyer is unavailable in the event of disagreement, Don Fork shall resolve such disagreement; otherwise, arbitration under Paragraph 23 hereof shall control.

In late June 2017, Jack represented to Jim that Jack had hired Penn as DVLT's attorney. Jack began paying Penn attorneys' fees with DVLT's funds. Jim asserts that Penn's representation of DVLT was a "falsehood"—that in fact Penn represented and had undivided loyalty "to its real client, Jack," rather than to DVLT. Jim also asserts that Penn accepted employment "with full knowledge" of this falsehood.

According to the Complaint, Jack and Penn fired Jim (as well as Jim's wife and daughter) from DVLT by "expel[ling], freez[ing]-out and exclud[ing]" him (and his wife and daughter) from the company. Upon effectuating the firing, Jack changed DVLT's physical locks and electronic passwords to prevent Jim's entry, and told Jim that if he tried to enter the building then

3

he—Jack—would call the police. Jack also paid certain bonuses and benefits to himself and his family. After these events took place, Jack and Penn represented to employees, vendors, and industry members that they "had the good cause as well as the power and authority" to fire Jim.[3] The Complaint states that the company is "either insolvent or on the brink of insolvency." The Complaint also states that Defendants refused to arbitrate certain claims after they fired Jim.

Jim now asserts eleven Counts, with some combination of Jack, Barbara, DVLT, and Penn named as Defendants[4] for each: Appointment of Custodian under 15 Pa. C.S.A. § 1767(a)(2) (Count I); Involuntary Winding Up and Dissolution of DVLT under 15 Pa. C.S.A. § 1981 (Count II); Declaratory Judgment (Count III); Injunction to Bar Jack and DVLT from Continuing to Use Penn as the Attorney for DVLT (Count IV); Breach of Fiduciary Duty (Count V); Conversion (Count VI); Unjust Enrichment (Count VII); Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing (Count VIII); Waste of Corporate Assets (Count IX); Damages Resulting from Tortious Conduct (Count X); and, Civil Conspiracy and Aiding and Abetting Torts (Count XI).

### III. DISCUSSION

The legal question at the core of the Complaint and motions to dismiss is: Does the Complaint adequately allege that Jim's firing violated the Shareholder Agreement? The answer is yes. Because the answer to this question helps resolve many of the other Counts asserted by Jim, the breach of contract claim (Count VIII) will be addressed first, and the remaining Counts

---

[3] In full, the Complaint states that "Penn and Jack each misrepresented falsely to, with the intent to deceive, and did deceive, employees, vendors, and participants in the industry of DVLT that Jack had the good cause as well as the power and authority to perform the wrongful actions described herein above[.]" As is the case for many passages in the Complaint, the quoted passage consists almost exclusively of legal conclusions that the Court must disregard. The only actual facts alleged, as noted above, are that Jack and Penn represented to certain actors that they had good cause and the authority to fire Jim and his family.

[4] Although the Complaint does not always specify, it appears only Counts III, IV, X and XI are brought against Penn, and only Counts IV and XI are brought against Barbara (Jack's wife). Jack appears to be a Defendant as to all Counts except for Count X. DVLT is implicated in Counts I, II, IV, VII and XI.

4

will follow.[5]

**A. Breach of Contract**

Count VIII asserts that Jack breached the Shareholder Agreement contract with Jim. To state a breach of contract claim in Pennsylvania, a plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). "[C]ontract interpretation is a question of law." *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008) (quoting *Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped*, 886 A.2d 706, 711 (Pa. Commw. 2005)). The parties only dispute whether there was a breach.

Section 26 of the Shareholder Agreement requires "unanimous consent of the Shareholders" for all "major decisions of the Corporation[.]"[6] It appears that the core of Jim's Complaint is that Jack breached the Agreement by unilaterally taking a "major decision"—ousting Jim, the only other Shareholder, from the Company—without seeking Jim's consent, thus breaching the Agreement by violating the "unanimous consent" provision. Jim has adequately alleged this breach.

Jack argues that firing Jim could not be a breach for two reasons. First, Jack points to Section 3(a) of the Shareholder Agreement, which refers to the "voluntary or involuntary" termination of a shareholder from the Company. Jack takes Section 3(a) to allow for the

---

[5] Defendants do not challenge either Count V (breach of fiduciary duty) or the Breach of the Covenant of Good Faith and Fair Dealing portion of Count VIII.

[6] "Major decisions" do not appear to be defined in the Shareholder Agreement. However, "the presence of . . . interpretive ambiguity . . . does not go to whether the contract is enforceable, but rather who (the judge or the jury) must decide what the given clause means." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 585-86 (3d Cir. 2009); *see also Ram Constr. Co. v. Am. States Ins. Co.*, 749 F.2d 1049, 1052 (3d Cir. 1984) ("[A]mbiguous terms are interpreted by the jury, unambiguous ones by the court."); *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986).

5

"involuntary" termination of a Shareholder. But even if a Shareholder may under certain circumstances be involuntarily terminated, not all involuntary terminations of Shareholders are countenanced by the Agreement—if that involuntary termination does not happen in accordance with the rest of the Agreement, then the termination would constitute a breach. That is what Jim alleges happened here—the termination did not accord with the rest of the Agreement.

Jack also points to Section 26(c) of the Agreement. That provision states both that "major decisions of the Corporation shall require unanimous consent of the Shareholders," and also that, "[i]n the event of a disagreement between the Shareholders," their father, John, "shall resolve such disagreement." Jack argues that Section 26(c) "can only be interpreted as having been included to prevent precisely the type of shareholder deadlock which Plaintiff claims barred Jack from firing him, hiring the Penn Firm, or taking any corporate action without his consent."[7] Again, it may well be the case that in certain circumstances Section 26(c) allows for a Shareholder to be fired from the Company—but only where its strictures have been followed. Jim's allegation is that they have not been followed.[8]

Because Jim has adequately alleged that Jack breached the Shareholder Agreement, the motion to dismiss this Count will be denied.

### B. Remaining Claims

Many of the remaining claims are resolved, at least in part, based on the conclusion that Jim has adequately alleged a breach of contract.

#### *a. Count One (Appointment of Custodian)*

---

[7] Jack also references evidence— a sworn statement made by his father, John—that Jack contends shows that the strictures of Section 26(c) were followed when Jim was fired. However, John's statement will be disregarded for the reasons set forth in footnote 2.

[8] Jack additionally makes the argument that the breach of contract claim is "subsumed" by the fiduciary breach claim. The basis for this argument is unclear, as it lacks both a clear logical thread and any legal citation. In any event, it provides no reason to think that Jim has not pleaded the elements of a breach of contract.

6

Count I seeks appointment of a custodian of DVLT pursuant to 15 Pa. C.S.A. § 1767(a). Section 1767(a)(2) provides that, subject to several affirmative exceptions, where "the directors or those in control of the corporation have acted illegally, oppressively or fraudulently toward one or more holders or owners of 5% or more of the outstanding shares . . . in their capacities as shareholders, directors, officers or employees," a court may appoint a "custodian of corporation." Because Jim has adequately alleged a breach, he satisfies the "acted illegally, oppressively or fraudulently" requirement.

Defendants make several arguments in favor of dismissing this Count, none of which persuades. First, Defendants argue that "some" Pennsylvania courts do not recognize fiduciary duties between coequal shareholders. *See Schmechel v. Gaither*, 2015 WL 6957061, at *4 (Pa. Super. June 24, 2015). But Defendants do not explain what this assertion has to do with Section 1767(a), a statutory provision that does not mention fiduciary duties, and delineates the situations—regardless of fiduciary status—when a court may appoint a custodian of corporation. Moreover, Defendants provide no reason why, specifically here, fiduciary duties should go unrecognized.

Second, Defendants point to the clause in the statute entitled "Exceptions," which states that a court "shall not appoint a custodian to resolve a deadlock if the shareholders by agreement or otherwise have provided for the appointment of a provisional director or other means of the resolution of the deadlock, but the court shall enforce the remedy so provided if appropriate." 15 Pa. C.S.A. § 1767(b)(1). Defendants contend that Section 26(c) of the Shareholder Agreement, which directs that John "shall resolve . . . disagreement[s]" between Jim and Jack, triggers this statutory exception. But Jim does not allege deadlock because the core of his allegation is that he was never consulted by Jack and thus they could not have reached deadlock. Accordingly, the

7

statutory exception does not apply.

Finally, Defendants argue that there was no "oppress[ive]" conduct, but their argument turns entirely on the assumption that Jim has failed to plead a violation of the Shareholder Agreement. For the reasons already discussed, *supra* section III.A, Jim has pleaded a violation, and therefore Defendants' argument is based on an unsupported premise.[9] Therefore, Count I will not be dismissed.

### b. *Count Two (Winding Up and Dissolution)*

Count II seeks involuntary winding up and dissolution of DVLT under 15 Pa. C.S.A. § 1981. Section 1981(a) provides that a court "may entertain proceedings for the involuntary winding up and dissolution of a corporation" if (1) those in control of the corporation engage in "illegal, oppressive or fraudulent" acts and "it is beneficial to the interests of the shareholders that the corporation be wound up and dissolved"; (2) corporate assets are being "misapplied or wasted"; or (3) "[t]he directors are deadlocked in the direction of the management of the business and affairs of the corporation and the shareholders are unable to break the deadlock[.]" Defendants point to *O'Farrell v. Steel City Piping Co.*, 403 A.2d 1319 (Pa. Super. 1978), a case where a court refused to wind up a corporation because "the record support[ed] the ... conclusion that the individual appellees pursued a course of conduct based on good faith and generosity rather than fraud and oppression." *Id.* at 1326. But, as this case is only at the motion to dismiss stage, there is no record on which to come to Defendants' preferred conclusion. Rather, the Court must take Jim's allegations as true. Because Jim has adequately alleged illegal or oppressive conduct—his freezing out of the Company contrary to the terms of the Shareholder

---

[9] Defendants also suggest that appointment of a custodian is impermissible in the absence of an "emergency" situation, *see Rumbaugh v. Beck*, 491 F. Supp. 511, 520 (E.D. Pa. 1980), but, even if so, the question of whether an emergency exists is fact-intensive and, as such, cannot be resolved here.

8

Agreement—Defendants' motion must be denied on this Count.[10]

### c. *Count Three (Declaratory Judgment)*

Count III seeks a declaratory judgment against all Defendants.[11] The Declaratory Judgment Act provides that, under particular circumstances, "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). Declaratory judgments are "inappropriate solely to adjudicate past conduct" and are not "meant simply to proclaim that one party is liable to another." *Warren v. Lehigh Cty. Ct. of Common Pleas*, 351 F. Supp.3d 835, 839 (E.D. Pa. 2019) (quoting *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (per curiam)); *see also Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 53 (1st Cir. 2013); *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004). Count III of the Complaint asks the Court to make findings on each disputed factual and legal question in the case. For example, it asks the Court to enter an order "declaring that . . . Jack and [Penn] entered into the Scheme" described in the Complaint, and that "[t]he purpose of the Scheme was for seizing for Jack . . . complete, unfettered control of DVLT, and to oppressively, and deceitfully render useless in the management of the business of DVLT, Jim's fifty percent ownership of DVLT." To the extent that the Complaint asks for declaratory judgment as to factual questions, that request lies beyond the scope of the Declaratory Judgment

---

[10] Similarly, Jack argues that no "waste" has occurred. This argument also requires taking inferences against Jim. "For there to be waste there must be a blatant squandering of assets to the detriment of the business entity, as if the sole purpose was to harm the entity and render what little might be left to the remaining shareholders worthless." *Simms v. Exeter Architectural Prods., Inc.*, 868 F. Supp. 668, 673 (M.D. Pa. 1994). Here, Jim alleges that Jack paid money to himself and his family, "including bonuses and other benefits that were neither owned, earned, reasonable or permitted." Taken in the light most favorable to Jim, this adequately pleads "waste" under Section 1981.

[11] Penn challenges Jim's standing to seek a declaratory judgment, contending that Jim has not alleged that he "suffered an 'injury in fact,'" that is sufficiently "concrete," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), but rather only asserts injuries to the Company. This argument misreads the Complaint: The Count seeking a declaratory judgment explicitly alleges "concrete" harms to Jim, including Jim's expulsion from the company, and the withholding of financial benefits from Jim. Therefore, Count III will not be dismissed for lack of standing.

9

Act, which allows courts to declare only "rights and other legal relations." 28 U.S.C. § 2201(a). And, to the extent the Complaint asks for declaratory judgment as to legal questions, those questions pertain solely to "past conduct" (for example, the Complaint asserts that "Jack committed acts of shareholder oppression, and misapplication, waste and conversion of the assets of DVLT"), *Warren*, 351 F. Supp.3d at 839, and therefore are not appropriately resolved through a declaratory judgment. Thus, the request for a declaratory judgment will be dismissed.

### d. *Count Four (Permanent Injunction)*

Count IV seeks a permanent injunction barring Jack and DVLT from using Penn as DVLT's attorney. The parties focus a significant portion of their briefing on whether Jim can require Penn to cease its current representation of DVLT and Jack. Defendants argue that this matter has become moot because Penn has entered a notice of withdrawal of appearance in this case. However, it is unclear whether Penn continues to represent DVLT and Jack in other matters. To the extent Penn continues such representation, the request for an injunction is not moot. Moreover, the Complaint also requests an injunction to prevent Penn from representing DVLT or Jack again in the future—a question that is certainly not moot.

As to the Count itself, Penn argues that Jim lacks standing to seek this injunction because Jim's claim only relates to "relief on behalf of DVLT and for the benefit of DVLT." Because standing is jurisdictional and thus may be raised *sua sponte*, *see Med. Soc'y of N.J. v. Jacobs*, 1993 WL 413016, at *3 (D.N.J. Oct. 5, 1993); *Frissell v. Rizzo*, 597 F.2d 840, 843 (3d Cir. 1979), it is appropriate to assess whether Jim has standing to pursue Count IV against Jack and DVLT. To have standing, a plaintiff "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is . . . concrete and particularized[,]" "there must be a causal connection between the injury and the conduct complained of," and "it must be likely . . . that the

10

injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). "[S]tanding is not dispensed in gross," but rather "a plaintiff must demonstrate standing for each claim he seeks[.]" *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (internal quotation marks omitted). And under Pennsylvania law, "a shareholder does not have standing to institute a direct suit for 'a harm that is peculiar to the corporation and that is only indirectly injurious to the shareholder.'" *Hill v. Ofalt*, 85 A.3d 540, 548 (Pa. 2014) (quoting *Reifsnyder v. Pittsburgh Outdoor Advert. Co.*, 173 A.2d 319, 321 (Pa. 1961)). Here, Jim lacks standing to bring this Count because the claim for relief is comprised entirely of the assertion that "[m]oney and other things of value *belonging to DVLT* . . . were and will be [improperly] paid to [Penn]," and that there is a "conflict of interest that [Penn] has as the attorney for Jack in actuality while pretending to be the attorney *for DVLT*" (emphasis added). In other words, Jim has merely alleged "a harm that is peculiar to the corporation," *Hill*, 85 A.3d at 548, upon which he lacks standing to bring a direct suit. Therefore, Count IV will be dismissed for lack of standing.

### e. *Count Six (Conversion)*

Count VI raises a claim of common law conversion against Jack. Conversion "is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use of possession of a chattel without . . . consent and . . . justification." *Broederdorf v. Bacheler*, 129 F. Supp.3d 182, 194 (E.D. Pa. 2015) (quoting *Pittsburgh Const. Co. v. Griffith*, 834 A.3d 572, 581 (Pa. Super. 2003)). However, the "gist of the action" doctrine—which "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims," *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002)—bars Jim's claim.

Where "the success of the conversion claim depend[s] entirely on the obligations as

11

defined by the contract," the conversion claim is barred. *Griffith*, 834 A.3d at 584. Such is the case here. The Complaint pleads that Jim lost access to his property—salary, distribution of dividends, corporate-decision-making, and appraisal rights—because he was fired in violation of the Agreement. Thus, whether Jack deprived Jim of his property rights "without . . . consent and . . . justification," *Broederdorf*, 129 F. Supp.3d at 194 (emphasis added), depends entirely on whether Jack violated the Agreement when he ousted Jim from the company.[12] Therefore, the gist of the action doctrine bars this Count.

### f. *Count Seven (Unjust Enrichment)*

Count VII seeks damages for unjust enrichment against both Jack and DVLT. The doctrine of unjust enrichment "sounds in quasi-contract," and thus is "inapplicable when the relationship between the parties is founded upon written agreements." *Rahemtulla v. Hassam*, 539 F. Supp.2d 755, 780 (M.D. Pa. 2008) (citing *Wilson Area Sch. Dist.*, 895 A.2d 1250, 1254 (Pa. 2006) and *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999)). As with the conversion claim, the unjust enrichment claim fails because it is based upon Jack's purported failure to abide by the terms of the Shareholder Agreement. Accordingly, the Count must be dismissed.

### g. *Count Nine (Waste of Corporate Assets)*

Jim asserts that Jack's "expenditure of DVLT's funds to pay [Penn] constitutes a waste of corporate assets." Waste occurs where there is "a blatant squandering of assets to the detriment of the business entity, as if the sole purpose was to harm the entity and render what little might

---

[12] Plaintiff's briefing presents no argument as to why this Count—or, for that matter, any of the subsequent Counts – should survive, beyond the assertion that "without actual facts, Defendants argue in a vacuum about theoretical failings or potential reasons why Jim might not prevail[.]" Since Plaintiff is the master of the complaint[.]," *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002), any such vacuum of facts is caused by Plaintiff's failure to plead them.

be left to the remaining shareholders worthless." *Simms v. Exeter Architectural Prods., Inc.*, 868 F. Supp. 668, 673 (M.D. Pa. 1994); *see also Schuylkill Skyport Inn, Inc. v. Rich*, 1996 WL 502280, at *11 (E.D. Pa. Aug. 21, 1996) (suggesting that a "disadvantageous" lease that caused "severe economic consequences" to the corporation could constitute waste). Here, Jim pleads that Jack paid money to himself and his family, "including bonuses and other benefits that were neither owned, earned, reasonable or permitted." Taking the alleged facts in the light most favorable to the Plaintiff, a claim of waste of corporate assets has been adequately pleaded.

### *h. Count Ten (Tortious Interference with Contractual Relations)*

Count X asserts "damages resulting from tortious conduct" against Penn. Although no such cause of action has been recognized by Pennsylvania courts, reading the Complaint in the light most favorable to Plaintiff, the Count appears to be an attempt to plead the elements of tortious interference with contractual relations: "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 384 (3d Cir. 2004) (describing Pennsylvania law); *accord Pawlowski v. Smorto*, 588 A.2d 36, 40 (Pa. Super. 1991). Whether interference is "privileged" is a question of whether Defendants' actions were "improper." *Salsgiver Commc'ns, Inc., v. Consol. Commc'ns Holdings, Inc.*, 150 A.3d 957, 966 (Pa. Super. 2016) (quoting *Empire Trucking Co., Inc. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 934 (Pa. Super. 2013)). Here, the Complaint satisfies the first element by pleading the existence of a contractual relationship between Jim and a third-party (DVLT), established by the

13

Shareholder Agreement. It satisfies the second element by pleading that "Penn knew from the outset of pretending to be the lawyer for DVLT that Jack had hired him for Jack's own sole benefit, to the exclusion of DVLT . . . and acted to expel, freeze-out and exclude Plaintiff[.]" It satisfies the third element by pleading that Penn's representation of DVLT was a "falsehood[.]" And it satisfies the fourth element by pleading a litany of damages, including his ouster from the Company, and his lack of corporate compensation.

Therefore, this Count remains.

### i. *Count Eleven (Civil Conspiracy and Aiding and Abetting Torts)*

Count XI asserts both civil conspiracy and aiding and abetting torts against all Defendants. As to conspiracy, "[i]n Pennsylvania, 'to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damages.'" *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 447 F.3d 297, 313 (3d Cir. 2003) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. 1997)). The "intracorporate conspiracy doctrine," however, holds that the "two or more persons acting with a common purpose" can neither be an attorney and the attorney's client, nor a corporation and the corporation's agent or officer—unless the attorney or agent or officer acted "for their sole personal benefit and thus outside the course and scope of their employment." *Heffernan v. Hunter*, 189 F.3d 405, 412 (3d Cir. 1999); *see also Gen. Refractories*, 337 F.3d at 313. The intracorporate conspiracy doctrine bars the conspiracy claim. The Complaint alleges that Penn was hired by DVLT as its attorney, and that Jack was an officer of DVLT. Because the Complaint contains factual allegations concerning a conspiracy only as to actors who are covered

by the intracorporate conspiracy doctrine, the conspiracy claim fails.[13]

As to the aiding and abetting torts claim, in Pennsylvania "one is subject to liability if he [1] does a tortious act in concert with the other or pursuant to a common design with him, or [2] knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or [3] gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." *HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.*, 107 A.3d 114, 120 (Pa. Super. 2014) (quoting Restatement (Second) of Torts § 876 (1977)).

The Complaint alleges that Jack was the principal liable for any tortious conduct, and does not plead facts relating to other tortious conduct that Jack could have aided and abetted. Therefore, the aiding and abetting claim will be dismissed as to Jack.

Similarly, the Complaint alleges no conduct specific to Barbara and DVLT that could satisfy the aiding and abetting elements—and Jim, in his responsive briefing, provides no argument to the contrary. The claim will be dismissed as to Barbara and DVLT as well.

With respect to Penn, it makes three arguments as to why it cannot be held liable. First, it argues that a third party cannot bring suit against a lawyer because of that lawyer's representation of a client. While that proposition may be true in the negligence context, *see Austin J. Richards, Inc. v. McClafferty*, 538 A.2d 11, 15 (Pa. Super. 1988), it is not so in the context of aiding and abetting intentional torts, *see Lhret Reading, L.P. v. Keystone Oncology Assocs., P.C.*, 2015 WL 3833856, at *3 (E.D. Pa. 2015) (applying Pennsylvania law). Therefore, this argument must be rejected. Second, Penn argues that aiding and abetting a breach of fiduciary duty does not exist under Pennsylvania law, a proposition that is belied by judicial

---

[13] The Complaint contains no factual allegations as to Barbara's participation in the conspiracy, and thus is dismissed as to her as well.

15

opinions which have concluded that law firms can be liable for such a violation, and have proceeded to analyze the facts of specific cases to determine whether or not a particular firm was liable for aiding and abetting a breach of fiduciary duty. *See, e.g., id.* at *3 (applying Pennsylvania law to assess "a claim against a law firm for aiding and abetting a breach of fiduciary duty"); *Reis v. Barley, Snyder, Senft & Cohen LLC.*, 426 F. App'x 79, 84 (3d Cir. 2011) (reversing the District Court's determination that a law firm was liable for aiding and abetting a breach of fiduciary duty, but acknowledging that the tort is cognizable in particular circumstances). This argument will be rejected. Finally, Penn argues that it was only retained after Jack had determined to suspend Jim and his family from the Company. This statement, however, does not appear to be based on facts within the Complaint. Thus, this argument too must be rejected.

* * *

For the foregoing reasons, Jack, Barbara and DVLT's motion to dismiss is granted in part, and Penn's motion to dismiss is granted in part and denied in part.[14]

An Order follows.

June 7, 2019

BY THE COURT:

_____
WENDY BEETLESTONE, J.

---

[14] Penn also requests that Jim's request for "costs of arbitration" be stricken. Penn's argument, however, refers only to "attorneys' fees and costs," while Jim states that the claim relates specifically to arbitration that is referred to briefly in the Complaint—not to attorneys' fees. *See Hodges v. SCE Envtl. Grp, Inc.*, 2012 1899669m at *5 (M.D. Pa. May 24, 2012) (differentiating between attorneys' fees and costs of arbitration). While the contours of this issue are unclear- and the parties would do well to clarify them in subsequent stages of this litigation—the Court declines to strike the request at this point.