IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES E. MEYER,<br>                Plaintiff,<br><br>v.<br><br>DELAWARE VALLEY LIFT TRUCK,<br>INC., MATERIAL HANDLING POWER<br>DESIGNERS, LLC, JOHN W. MEYER,<br>BARBARA A. MEYER, AND LAW<br>OFFICES OF BARRY F. PENN, P.C.,<br>                Defendants. | CIVIL ACTION<br><br><br>NO. 18-1118 |

## MEMORANDUM OPINION

Defendants Delaware Valley Lift Truck, Inc. ("DVLT"), John W. Meyer ("Jack"), Barbara A. Meyer, and the Law Offices of Barry F. Penn ("Penn") (collectively, "Defendants") move to quash Jim Meyer's subpoena duces tecum issued to Christopher J. McGuckin, CPA, who is not a party in this litigation. For the reasons that follow, Defendants' motion to quash will be denied.

**I.    BACKGROUND**

Jim initially brought this action asserting various state law claims that turn primarily on the allegation that Defendants "squeezed" him out of DVLT by firing him in violation of Jack and Jim's Shareholder Agreement, physically barring Jim from the premises, and ultimately seizing control of DVLT. Defendants filed a motion to dismiss that was granted in part and denied in part. Several claims remain, including breach of contract and corporate waste.

In the course of discovery, Jim issued a subpoena duces tecum to Christopher McGuckin, DVLT's accountant, requesting that he be deposed and that he produce documents related to the accounting services he provided for DVLT. Defendants moved to quash both the deposition and document request. Both parties have briefed the motion and provided affidavits from relevant

1

parties—Defendants offer an affidavit from McGuckin, Jim provides an affidavit from his expert, John E. Mitchell, CPA. As to the documents Jim seeks, Defendants specifically objected to the request that McGuckin produce "the Permanent File for DVLT," "all general and subsidiary ledgers and journals for DVLT," "all files . . . for any financial/accounting management software system in use for DVLT," "all workpapers prepared for DVLT," and "all trial balances relating to DVLT, including adjusting entries."

## II. DISCUSSION

"[T]he serve-and-volley of the federal discovery rules govern the resolution of a motion to quash." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014) (internal quotation marks omitted). "The subpoenaing party must first show that its requests are relevant to its claims or defenses, within the meaning of Federal Rule of Civil Procedure 26(b)(1)." *Id.* The burden then shifts to the subpoenaed non-party who must show that the disclosure is protected. *See id.* The burden to support a motion to quash is "particular heavy . . . as contrasted to some more limited protection such as a protective order." *Frank Brunckhorst Co. v. Ihm*, 2012 WL 5250399, at *4 (E.D. Pa. Oct. 23, 2012) (internal quotation marks omitted).

Defendants assert that deposing McGuckin at this time is untimely because McGuckin is an expert and the time for expert depositions has not yet occurred, and that the accompanying document request is overly broad because it seeks irrelevant documents. Jim responds that McGuckin will be deposed as a fact witness and that all documents requested are relevant because they will "establish a baseline for what the two owners drew from the business" and to "show what Jack took from DVLT after he seized complete control" of the company.[1]

---

[1] As a threshold matter, Jim also challenges Defendants' standing to quash this subpoena, arguing that because McGuckin—and not Defendants—will bear the cost of complying with the subpoena, McGuckin himself should move to quash. This argument is unpersuasive. A party has standing to quash a subpoena issued to a third party when "the party seeks to quash based on claims of privilege relating to the documents being sought" or where the

2

**A. Deposition**

Federal Rule of Civil Procedure 26(b)(4)(A) provides that a party may only depose a designated expert who has submitted his or her expert report. *See Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434 (E.D. Pa. 2001) (noting that Rule 26 "governs depositions and accompanying subpoenas duces tecum issued to experts"). Defendants argue that because McGuckin has not submitted an expert report, he may not be deposed.

The real dispute here, however, is whether Jim is seeking to depose McGuckin as an expert—or as a fact witness.[2] If the latter, then the Rule 26(b)(4)(A) timing requirements would not apply. Fact witnesses testify based on "personal knowledge of the matter" in question, *Keiser v. Borough of Carlisle*, 2017 4075057, at *3 (M.D. Pa. Sept. 14, 2017) (quoting Fed. R. Evid. 602), whereas expert witnesses opine based on "knowledge, skill, experience, training or education" where such specialized insight will, *inter alia*, "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702.

Defendants assert, with little reasoning or argumentation, that "McGuckin's testimony is being sought only as an expert" because "there is no allegation of any financial wrongdoing in this case." Jim, on the other hand, explains that in order to show both liability and damages for his breach of contract and corporate waste claims, he will need to compare DVLT's operation and accounting prior to and after the alleged 2017 "squeeze out." Jim further states that he plans to have his own expert create a model comparing DVLT's finances before and after the "squeeze

---

party has an "interest" in the documents being sought. *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434-35 (E.D. Pa. 2001). Here, the documents subpoenaed are DVLT's accounting records, information in which Defendants certainly "have an interest." *Id.*

[2] It bears noting that the Federal Rules do not prohibit a person from testifying as both a fact witness and an expert witness. *See United States v. Freeman*, 498 F.3d 893, 904 (9th Cir. 2007). Accordingly, it is conceivable that, during the expert discovery period, if McGuckin is identified as an expert, Jim may want to depose him in such capacity.

3

out," which will show, among other things, the value of the company at the time in question and whether corporate assets were spent in uncharacteristic ways following Jim's ejection from the company. And Jim asserts that McGuckin possesses "personal knowledge" about DVLT's operations and accounting—due to his many years of service as DVLT's accountant—that is relevant to such a model. Moreover, Jim notes that McGuckin has not, as yet, been designated as an expert witness by either party.

To the extent that the facts about which Jim will question McGuckin stem from McGuckin's personal knowledge and would not entail asking McGuckin about any opinions he may have should he become a designated expert, deposing him during fact discovery is appropriate. The motion to quash the deposition request will be denied.

### B. Document Production

Federal Rule of Evidence 45(d)(3)(A) provides, *inter alia*, that a Court must quash a subpoena and protect against disclosure if it "subjects a person to undue burden." Defendants here argue that the document requests impose such an "undue burden."

To determine if a Rule 45(d)(3)(A) subpoena imposes an undue burden, courts typically consider "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *see also Domestic Drywall*, 300 F.R.D. at 252 (implementing six-factor *Wiwa* test); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48-49 (S.D.N.Y. 1996) (same). The parties only dispute relevance; Defendants argue that financial documents from before the June 2017 "squeeze-out" are not relevant to the claims in this case. For purposes of discovery, information is relevant if it

4

"appears reasonably calculated to lead to the discovery of admissible evidence." *Victor v. Lawler*, 2011 WL 3794951, at *3 (M.D. Pa. Aug. 26, 2011) (internal quotation marks omitted).

The requested documents—including those from before June 2017—are relevant to Jim's claims. The core of Jim's Complaint is that Jack violated the Shareholder Agreement in various ways when he squeezed Jim out of the company. These violations include the manner in which Jim was fired from the company, Jack physically barring Jim from the DVLT premises, and corporate waste by Defendants after Jim had been forced out of the company. To prove the resultant damages, Jim asserts that his expert will analyze what Jim and Jack each drew from DVLT before 2017 in order to determine what Jim could have been expected to draw from DVLT between 2017 and 2019. Similarly, Jim asserts that comparison between pre- and post-2017 financial documents will allow Jim's expert to form an opinion as to whether corporate assets were wastefully drawn from the company after Jim no longer worked there. Accordingly, the documents in question are relevant because—in the words of Jim's expert—they will be used "to establish a baseline for what the two owners drew from the [DVLT]" and to "show what Jack took from DVLT after he seized complete control of the company." Given Jim's expert's affidavit supporting the subpoena, the documents are relevant because they could reasonably be calculated to lead to the discovery of relevant information. *See Domestic Drywall*, 300 F.R.D. at 240-41.[3]

Beyond the relevance factor, the other five factors—need, breadth, time period, particularity, and burden, *Domestic Drywall*, 300 F.R.D. at 252—each point in Jim's favor (and

---

[3] Defendants argue that to the extent a valuation of the company is necessary, the Shareholder Agreement provides the methodology for doing so—and that the Shareholder Agreement only allows consideration of financial records one year prior to the valuation. However, the Shareholder Agreement's language only applies to "an offer . . . to sell . . . Shares," whereas here Jim seeks damages for breach of contract, waste, and other violations sounding in contract and tort law. Therefore, the Shareholder Agreement does not impose limitations on the documents that can be considered for purposes of Jim's valuation of the company.

Defendants provide no argument to the contrary). Jim "needs" the documents because they relate to both liability and damages; they provide unique information about the financial claims in this case. The "breadth" of the request is limited to accounting documents and is reasonable given their expected use and the issues in the case. The "time period" of the requested documents is appropriate because 2012 was the year when the two brothers first became equal partners in DVLT. The documents requested are sufficiently "particular" because they have been specifically identified and pertain to a cabined set of information. Finally, as to "burden," Defendants claim that the "burden" imposed on McGuckin by this subpoena amounts to 80 hours of work at $125.00 per hour for a total cost of roughly $10,000.00, an amount which, absent any given rationale, appears excessive. Therefore, Defendants' argument that the document request imposes an undue burden is rejected.

    An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**